## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UL LLC, a Delaware limited liability company, | |
| Plaintiff, | |
| v. | CASE NO. |
| RUNDEER GROUP, INC., a California corporation, JOHN DOES 1-10, individuals, and ABC CORPORATIONS 1-10, entities, | |
| | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiff UL LLC ("UL" or "Plaintiff") by and through its undersigned attorneys, brings this action to enjoin Defendants Rundeer Group, Inc. ("Rundeer"), John Does 1-10, and ABC Corporations 1-10 (collectively "Defendants") from offering for sale, selling, advertising, and promoting goods that infringe UL's valuable marks (as defined and discussed below), and alleges as follows:

## NATURE OF THE CASE

1.      This is an action for (i) counterfeiting and trademark infringement in violation of the Trademark Act of 1946, 15 U.S.C. §§ 1114(1) and 1116(d); (ii) the use of false designations of origin and false and misleading descriptions and representations in violation of the Trademark Act of 1946, 15 U.S.C. § 1125(a); (iii) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505; (iv) violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510; (v) trademark infringement in violation of Illinois common law; (vi)

1

unfair competition in violation of Illinois common law; and (vii) unjust enrichment; arising from Defendants' intentional and willful infringement of UL's well-known certification and service marks, which UL has used continuously since at least 1906 in connection with providing product testing and certification services. Defendants' willful infringement through its unauthorized use of UL's certification marks and service mark in association with Defendants' electric bicycles ("e-bikes") causes a likelihood of confusion in the marketplace, and has caused immediate and irreparable harm to UL, UL's certification and service marks, and to consumers. UL seeks, among other things, damages and an injunction prohibiting Defendants from their infringing use of any "UL" designation.

## THE PARTIES

2.     UL is a Delaware limited liability company located and doing business at 333 Pfingsten Road, Northbrook, Illinois 60062. UL is an affiliate of the UL family of companies, which have tested and certified products, and developed safety standards for over a century. Some of the additional services offered by UL include inspection services, advisory services, testing and auditing and analytics. Plaintiff UL owns the well-known UL-in-a-circle certification mark, the UL service mark, and variations thereof (the "UL Marks").

3.     Defendant Rundeer Group, Inc., is a California corporation, with a principal place of business at 2650 Walnut Avenue, Unit E-2, in Tustin, California, 92780. Rundeer is in the business of offering for sale and selling electric bicycles (e-bikes). Rundeer distributes and sells its products throughout the United States through its online store at <www.rundeers.com> and through Amazon on its storefront at <www.amazon.com/stores/RUNDEER>.

4.     Upon information and belief, John Does 1-10 are individuals, employees, and/or agents of Rundeer, who are directing, controlling and/or participating in the infringement and

counterfeiting of the UL Marks as addressed herein.

5.      Upon information and belief, ABC Corporations 1-10 are entities who are affiliates of or associated with Rundeer, and/or John Does 1-10, who directing, controlling, participating, or associated with the infringement and counterfeiting of UL Marks as addressed herein.

6.      Rundeer, John Does 1-10 and ABC Corporations 1-10 are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1338(a) and (b) because the claims address federal questions concerning the Lanham Act, 15 U.S.C. § 1121, trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, and federal unfair competition pursuant to 15 U.S.C. § 1125(a).

8.      The Court has supplemental jurisdiction over the claims arising under the laws of the State of Illinois, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

9.      This Court has personal jurisdiction over each of the Defendants because UL's claims for trademark infringement, counterfeiting, and unfair competition arise from acts conducted and harm sustained in the State of Illinois. Defendants directly target consumers in the United States, including Illinois. Specifically, Defendants are using the website hosted at <www.rundeers.com> and the Amazon store at <www.amazon.com/stores/RUNDEER> to offer for sale and sell e-bikes that have been advertised as being certified by UL, when in fact, they have not been. Each Defendant is committing tortious acts directed at Illinois, is engaging in interstate commerce, and has wrongfully caused UL harm in the State of Illinois.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A.     UL'S VALUABLE RIGHTS

11.     Founded in 1894, UL, including its affiliates and predecessors, is one of the oldest certification companies in the United States. UL has tested, inspected, and certified products to regional, national, and international safety standards for over a century.

12.     UL engineers have contributed to the development of more than 1,000 famous "UL Standards for Safety" as well as international and regional standards, sitting on more than 1,300 standards panels and technical committees.

13.     UL's services include advising on regulatory compliance matters, certifying that representative samples of products satisfy applicable safety standards, and providing follow-up testing and inspection services to confirm that manufacturers comply with those standards.

14.     UL is a global independent safety science company offering certification, validation, testing, inspection, advising, and auditing services for a variety of industries around the globe.

15.     UL owns the well-known UL-in-a-circle certification mark ⓊⓁ and variations thereof (the "UL Certification Marks"). UL also owns the service mark UL (the "UL Service Mark").

16.     UL has been providing testing reports and certifying products that conform to applicable safety standards since at least 1906. Since at least 1906, UL, including its affiliates and predecessors, have continuously used the UL Service Mark in interstate commerce.

17.     UL has been testing products and authorizing use of the well-known UL

4

Certification Marks on products that conform to applicable safety standards in interstate commerce in the United States since at least 1937. UL's authorized customers have been using the UL Certification Marks on products offered for sale and distributed in interstate commerce since 1937.

18.     UL's thousands of authorized customers have used UL's well-known UL Certification Marks on billions of household, consumer, commercial, and industrial products including refrigeration equipment, lighting products, cable, wiring, building materials, life safety vests, batteries and power packs for computers and consumer electronics, traffic signals, sprinklers, cash registers, and many more.

19.     Over the past century, UL has promoted recognition of its certification programs through a wide variety of marketing channels on a national, regional, and local basis, including but not limited to television, radio, consumer and trade newspapers, consumer and trade magazines, industry trade journals, promotional literature, brochures, direct mail, email campaigns, and its interactive website located at <ul.com>. UL also promotes its UL Certification Marks and the UL Service Mark through its participation in standards development activities, follow-up conformity assessment and inspection services, community involvement, and safety science research.

20.     As a result of UL's extensive use of the UL Service Mark to promote its certification programs, including standards development activities, follow-up conformity assessment and inspection services, community involvement, and safety science research, the UL Service Mark and the UL Certification Marks have attained a national and global reputation for technical expertise and integrity and have become symbols of trust and objectivity.

21.     The UL Service Mark and the UL Certification Marks are well-known and recognized by the general public, as well as by members of local, state and federal government

regulatory bodies and industry trade associations, as marks indicating testing, inspection and certification services originating with UL.

22.     The UL Service Mark and the UL Certification Marks are renowned among the general public as symbols of UL's testing, inspection and certification services originating with UL, and have been renowned since long before Defendants began engaging in the conduct alleged in this Complaint.

23.     UL has duly and properly registered the UL Service Mark and the UL Certification Marks in the United States Patent and Trademark Office ("USPTO") on the Principal Register. UL owns the following federally registered marks, among others. Copies of these registrations are attached hereto as Exhibits 1-5, respectively.

| Mark | Reg. No. | Type | Exhibit |
|---|---|---|---|
| (UL logo) | 782,589 | Certification Mark | Exhibit 1 |
| (UL logo) | 2,391,140 | Certification Mark | Exhibit 2 |
| (UL LISTED logo) | 6,316,052 | Certification Mark | Exhibit 3 |
| (UL CERTIFIED logo) | 4,283,960 | Certification Mark | Exhibit 4 |
| UL | 4,201,014 | Service Mark | Exhibit 5 |

24.     The federal trademark registrations referenced above are valid and subsisting, and provide conclusive evidence of the right of UL to use the UL Service Mark and authorize the use of the UL Certification Marks in commerce.

6

25.     UL certifies the products of others in a variety of industries (the "Certification Services") under its UL Certification Marks (Exhibits 1-4), and offers business advisory, product testing, and public safety services (the "UL Services") under the UL Service Mark (Exhibit 5).

26.     The UL Certification Marks and UL Service Mark are collectively referred to herein as the "UL Marks."

27.     Use and registration of the UL Marks establish that UL has senior trademark rights in the UL Marks, and consequently there is no question of priority of rights, as such priority belongs to UL.

28.     UL's United States Trademark Registration Nos. 2391140, 782589, and 4283960 referenced above are incontestable under 15 U.S.C. § 1115(b). As such, UL's incontestable federal trademark registrations confer exclusive use of the UL Certification Marks throughout the United States in connection with the UL Certification Services.

29.     UL has extensively used the UL Service Mark and has advertised, promoted, and offered UL Services under the UL Service Mark in interstate commerce through various channels of trade. As a result, the customers and potential customers of UL, and the public in general, have come to know and recognize the UL Service Mark as identifying the UL Services as services of the highest quality offered by UL, and associate the UL Service Mark with the UL Services. UL has thus built up extensive and invaluable goodwill in connection with the sale of its services offered under its UL Service Mark.

**B.      UL'S SAFETY STANDARDS FOR E-MOBILITY DEVICES**

30.     Electric mobility devices such as e-bikes and e-scooters, have become increasingly popular as a sustainable commuting alternative. In order to meet consumer demand, unscrupulous manufacturers rushed these products to production without sufficient attention to key safety

details.

31.     Starting in or around 2020, there were numerous reports of e-bikes and e-scooters self-combusting and catching on fire.[1] Throughout 2021 and 2022, the Consumer Product Safety Commission (CPSC) received reports of at least 208 micromobility fire incidents from 39 states, resulting in at least 19 fatalities. Electric mobility devices that were exploding and setting on fire became a significant safety concern, because they were not only causing injury to users, but they were also causing severe damage to buildings and other property. For instance, in February 2024, a lithium-ion battery in an e-bike caught fire and caused damage to a home in Park Ridge, Illinois.[2] In September 2024, the Chicago Fire Department issued a public safety announcement regarding the rise of fires and explosions caused by e-bikes.[3]

32.     UL tests and certifies e-bikes and related accessories and components (e.g., batteries and chargers) to ANSI/CAN/UL Standard 2271 (Batteries for Use In Light Electric Vehicle (LEV) Applications), ANSI/CAN/UL Standard 2272 (Electrical Systems for Personal E-Mobility Devices)[4] and ANSI/CAN/UL Standard 2849 (Electrical Systems for e-Bikes). (*See* Exhibit 9.) UL issued its first certification of e-bikes under ANSI/CAN/UL 2849 in 2020.

33.     On December 20, 2022, the CPSC urged over 2,000 manufacturers, importers, distributors, and retailers of electric mobility devices to sell products that were compliant with UL safety standards 2272 and 2849.[5]

34.     In August 2025, the Illinois General Assembly passed Senate Bill 2247, the

---

[1] See https://www.npr.org/2023/03/11/1162732820/e-bike-scooter-lithium-ion-battery-fires (Exhibit 6).
[2] See https://www.chicagotribune.com/2024/02/06/explosion-of-e-bike-lithium-ion-battery-causes-park-ridge-house-fire-150000-damage-fire-department/ (Exhibit 7).
[3] https://www.fox32chicago.com/news/lithium-battery-fires-safety-warning-chicago (Exhibit 8).
[4] Micromobility Device Safety Testing and Certification, at https://www.ul.com/industries/automotive-and-mobility/micromobility-device-evaluation-testing-and-certification (Exhibit 9).
[5] https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-Calls-on-Manufacturers-to-Comply-with-Safety-Standards-for-Battery-Powered-Products-to-Reduce-the-Risk-of-Injury-and-Death (Exhibit 10).

Micromobility Fire Safety Act, which requires that e-bikes and personal e-mobility devices be "tested by an accredited testing laboratory and found…to comply with ANSI/CAN/UL Standard 2849," that electrical systems for any personal e-mobility device be "tested by an accredited testing laboratory and found to comply with ANSI/CAN/UL Standard 2272," and any traction battery used with e-bikes "comply with ANSI/CAN/UL Standard 2271, ANSI/CAN/UL Standard 2849, or EN Standard 15194."[6]

35.     Over the last few years, UL has issued certifications to several manufacturers of e-mobility device manufacturers. Unfortunately, there are a number of counterfeiters, such as Defendants, who insist on claiming their products are certified by UL when, in fact, they are not UL customers and have never received certification from UL for these products.

36.     On information and belief, because the highly publicized safety issues related to e-scooters, and the Micromobility Fire Safety Act, many unscrupulous manufacturers and retailers responded to this by falsely claiming that their e-mobility devices, were "UL Certified."

37.     Defendants are among those retailers that have begun advertising their e-mobility products as being "UL Certified" without actually having certification by UL.

### C.     DEFENDANTS' UNLAWFUL CONDUCT

38.     Defendants have been using marks that are identical to or substantially indistinguishable from the UL Certification Marks and the UL Service Mark (here, the "Counterfeit UL Marks") to falsely suggest that its goods are certified by UL. Specifically, Defendants are using or have used the Counterfeit UL Marks in association with the offering for sale and sale of four different models of e-bikes: Starry Sky UD, Starry Sky 3K, Attack 10 and Attack 11 (together, the "Infringing Rundeer Products").

---

[6] https://www.billtrack50.com/billdetail/1824969 (Exhibit 11); and
https://www.ilga.gov/documents/legislation/104/SB/10400SB2247enr.htm (Exhibit 12).

39.     The Infringing Rundeer Products are offered for sale, or have been offered for sale, by Defendants nationwide through Rundeer's website at <rundeers.com> (the "Rundeer Website") and Amazon store at <amazon.com/stores/Rundeer> (the "Rundeer Amazon Store") via online ordering.

40.     Representative samples of Defendants' unauthorized use of the Counterfeit UL Marks are shown below and attached as Exhibit 13:









41.     The Infringing Rundeer Products shown above bear a counterfeit imitation of the UL Marks representing to customers that Defendants' products are certified by UL. But Defendants are not UL customers, and UL has not authorized Defendants to use the UL Marks in connection with e-bikes, or related products.

42.     Defendants' use of the Counterfeit UL Marks is identical to and confusingly similar to the UL Marks in appearance, sound, meaning, and commercial impression.

43.     Defendants' use of the Counterfeit UL Marks falsely suggests that their goods have been authorized or certified by UL.

44.     Defendants' use of the Counterfeit UL Marks trades off the goodwill of the UL Service Mark and UL Certification Marks and is without permission or license from UL.

11

45.     Defendants' goods associated with the Counterfeit UL Marks have not been certified by UL, and as such, may place the health and safety of the user at risk.

**D.      DEFENDANTS' CONDUCT IS WILLFUL**

46.     Defendants' infringement has always been willful.

47.     Defendants were on constructive notice of the UL Marks by virtue of UL's federal registrations for those marks. Despite this, Defendants deliberately placed the Counterfeit UL Marks on their e-bike product listings offered for sale on the Rundeer Website and Rundeer Amazon Store. Defendants took these actions to falsely represent that their e-bikes were certified by UL. Defendants are aware that they have never asked UL for permission to use any of the UL Marks. Defendants are aware that UL has never authorized Defendants to make any use of the UL Marks. Defendants nevertheless used the UL Marks in association with the promotion and sale of e-bikes.

48.     In or around February 2025, UL became aware of Defendants' unauthorized use of the UL Marks with the promotion and sale of Defendants' Starry Sky UD and Starry Sky 3K model e-bikes. On March 28, 2025, counsel for UL sent a letter to Rundeer informing Defendants of their unauthorized use of the UL Marks on the Rundeer Website. A copy of that letter is attached as Exhibit 14.

49.     UL never received a response to the March 2025 letter. However, shortly after receiving UL's letter, Defendants took down the infringing UL Marks associated with the Starry Sky UD and Starry Sky 3K model e-bikes. (*See* Exhibit 15.)

50.     In or around August 2025, UL discovered that Defendants had yet again started using the Counterfeit UL Marks with the sale and promotion of e-bikes. In particular, Defendants began falsely advertising that their Attack 10 and Attack 11 model e-bikes are certified by UL on

12

the Rundeer Website, Rundeer Amazon Store, and on Rundeer's Instagram Account at <instagram.com/rundeerofficial>. Screen captures of the Counterfeit UL Marks on the Rundeer Website, Rundeer Amazon Store, and the Rundeer Instagram Account are attached as Exhibits 16-18, and representative samples of Defendants' use of the Counterfeit UL Marks with the Attack 10 and Attack 11 model e-bike are below:





51.     Defendants even posted a blog post on the Rundeer Website about UL certification.[7]



52.     On September 5, 2025, counsel for UL sent another letter to Rundeer reiterating Defendants' misuse of the UL Marks and requesting the immediate removal of the Counterfeit UL Marks. A copy of that letter is attached as Exhibit 20.

53.     UL's counsel and Rundeer exchanged several communications throughout September, where Rundeer refused to take down the Counterfeit UL Marks. (See Exhibit 21.) Rundeer ceased communicating with UL's counsel in late-September 2025.

54.     Having received several communications from UL, Defendants know or have reason to know that their usage of the UL Marks is unauthorized. Despite this actual knowledge, Defendants are still using the Counterfeit UL Marks on the Rundeer Website, Rundeer Amazon Store and Rundeer Instagram Account.

55.     Upon information and belief, Defendants intentionally adopted the use of the

---

[7] https://www.rundeers.com/blogs/news/ul-certification-ebike-safety-subsidies?_pos=1&_sid=552c29bb5&_ss=r (Exhibit 19).

Counterfeit UL Marks so as to create consumer confusion as to whether their e-bikes are certified by UL, and traffic off of UL's reputation and goodwill under the UL Marks.

56.     UL has suffered, and unless Defendants' conduct is enjoined by this Court, will continue to suffer irreparable harm to UL's brand value, reputation, and goodwill, for which UL has no adequate legal remedy.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING
### (15 U.S.C. §§ 1114(1), 1116(d))

57.     UL repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

58.     UL owns valid federal registrations for the UL Certification Marks and UL Service Mark.

59.     The UL Certification Marks and UL Service Mark are fanciful and arbitrary and are associated in the minds of the public and consumers with UL.

60.     Defendants' Counterfeit UL Marks are identical to or substantially indistinguishable from the UL Certification Marks and UL Service Mark in appearance, sound, meaning, and commercial impression, such that the use thereof is likely to cause (i) confusion, mistake, and deception as to whether Defendants' e-bikes were certified by UL, (ii) the public to be confused, deceived, and to assume erroneously that Defendants' e-bikes have been certified by UL or that Defendants are in some way connected with, licensed, authorized, certified by, or affiliated with UL, and (iii) irreparable injury and damage to UL and to the goodwill and reputation symbolized by the UL Marks.

61.     Likelihood of confusion is enhanced by the fact that the UL Certification Marks and the UL Service Mark are strong, well-known, and entitled to a broad scope of protection.

62.     Likelihood of confusion is also enhanced by the fact that the Counterfeit UL Marks,

the UL Certification Marks and the UL Service Mark prominently incorporate the key component "UL."

63.     Defendants' use of the Counterfeit UL Marks without UL's authorization or consent is a willful and intentional infringement of the UL Certification Marks and the UL Service Mark.

64.     Defendants' conduct intended to exploit UL's goodwill and reputation associated with the UL Certification Marks and the UL Service Mark. Consumers are likely to purchase or engage Defendants' e-bikes being offered under the Counterfeit UL Marks, believing them to have been certified by UL, thereby resulting in a loss of goodwill and economic harm to UL.

65.     UL has no control over the quality of Defendants' e-bikes promoted and sold by Defendants. Defendants have recklessly placed e-bikes into the marketplace which purport to have been certified by UL, when in fact UL never performed any such certification testing on the e-bikes Defendants are selling.

66.     UL is informed and believes and, on that basis, alleges that Defendants have derived unlawful gains and profits from their infringing use of the Counterfeit UL Marks.

67.     Unless Defendants are enjoined by this Court from so doing, UL will continue to suffer irreparable harm and injury to its goodwill and reputation.

68.     UL has no adequate remedy at law.

69.     As a result of Defendants' actions, UL has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

### COUNT II

**UNFAIR COMPETITION AND FALSE DESIGNATIONS OF
ORIGIN AND FALSE AND MISLEADING REPRESENTATIONS
(15 U.S.C. §1125(a))**

16

70.     UL repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

71.     Defendants' use of the Counterfeit UL Marks constitutes unfair competition and a false designation of origin or false or misleading description or representation of fact, which is likely to deceive customers and prospective customers into believing that Defendants' e-bikes offered for sale under Defendants' Counterfeit UL Marks have been certified by UL, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72.     Upon information and belief, Defendants intentionally adopted and used the Counterfeit UL Marks to create consumer confusion and traffic off of UL's reputation and goodwill associated with the UL Certification Marks and the UL Service Mark.

73.     UL has no control over the nature and quality of Defendants' e-bikes offered for sale and advertised in association with the Counterfeit UL Marks. Thus, the value of the UL Certification Marks and the UL Service Mark is subject to damage by entities and individuals it cannot control. Unless enjoined by this Court from so doing, Defendants will continue to engage in acts of unfair competition, false representation and designation, to the irreparable damage and injury of UL.

74.     Defendants' actions cause or are likely to cause confusion or mistake among the public as to whether Defendants' e-bikes have been tested and certified by UL, or to confuse the public into believing that Defendants' e-bikes are otherwise affiliated, connected, associated with, or sponsored by UL, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

75.     UL is informed and believes and, on that basis, alleges that Defendants have derived unlawful gains and profits from their infringement of the UL Certification Marks and the UL Service Mark.

76.     The goodwill of UL's business under the UL Certification Marks and the UL

Service Mark is of great value, and UL will suffer irreparable harm to its trade reputation and goodwill, should Defendants' acts of unfair competition and false representation and designations be allowed to continue.

77.     UL has no adequate remedy at law.

78.     As a result of Defendants' actions, UL has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT III

### ILLINOIS DECEPTIVE TRADE PRACTICES 815 ILCS 510/1 et seq.

79.     UL repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

80.     The above-described conduct of Defendants constitutes deceptive trade practices in violation of 815 ILCS 510/1 et seq. insofar as it:

(a) passes off goods or services as those of another;

(b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(d) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; and

(e) represents that goods or services are of a particular standard, quality, or grade.

81.     Defendants conduct constitutes deceptive trade practices in that their conduct in trade and commerce employ practices set out in Section 2 of the Uniform Deceptive Trade

18

Practices Act, 815 ILCS 510/2, and/or constitute the use and/or employment of deception, fraud, false pretense, false promise, misrepresentation and/or the concealment, suppression and/or omission of a material fact, with an intent that others rely upon the concealment, suppression or omission of such material act.

82.     Defendants' aforesaid conduct has caused and, unless and until such conduct is restrained and enjoined by this Court, will continue to cause great, immediate, and irreparable injury to UL, including irreparable injury to their reputation and goodwill.

83.     As the direct and proximate result of Defendants' statutory violations and/or other wrongful conduct, UL has suffered and will continue to suffer actual injury and the loss of money in an amount to be proven at trial.

84.     Defendants have realized revenue and profits by virtue of their wrongful conduct that it otherwise would not have obtained and to which it is not entitled.

85.     UL has no adequate remedy at law for Defendants' wrongful conduct.

## COUNT IV

### ILLINOIS DECEPTIVE TRADE PRACTICES 815 ILCS 505/1 et seq.

86.     UL repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

87.     The above-described conduct of Defendants constitutes deceptive trade practices in violation of 815 ILCS 505/1 et seq. insofar as it:

> (a) passes off goods or services as those of another;
>
> (b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

19

(d) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; and

(e) represents that goods or services are of a particular standard, quality, or grade.

88.     Defendants' wrongful conduct stated above constitutes deceptive business practices in violation of 815 ILCS 505/2.

89.     Defendants have engaged in the above-described conduct willfully and deliberately and with full knowledge of UL's rights.

90.     Defendants' aforesaid conduct has caused and, unless and until such conduct is restrained and enjoined by this Court, will continue to cause great, immediate, and irreparable injury to UL, including irreparable injury to their reputation and goodwill.

91.     As the direct and proximate result of Defendants' statutory violations and/or other wrongful conduct, UL has suffered and will continue to suffer actual injury and the loss of money in an amount to be proven at trial.

92.     Defendants have realized revenue and profits by virtue of their wrongful conduct that it otherwise would not have obtained and to which it is not entitled.

93.     UL has no adequate remedy at law for Defendants' wrongful conduct.

## COUNT V

## COMMON LAW TRADEMARK INFRINGEMENT

94.     UL repeats and realleges paragraphs 1 through 56 as if set forth herein.

95.     UL has been using the UL Certification Marks and UL Service Mark in commerce with the testing and certification of goods for several years and therefore owns common law

trademark rights in the UL Marks.

96.     The UL Certification Marks and UL Service Mark are fanciful and arbitrary and are associated in the minds of the public and consumers with UL.

97.     Defendants' Counterfeit UL Marks are identical to or substantially indistinguishable from the UL Certification Marks and UL Service Mark in appearance, sound, meaning, and commercial impression, such that the use thereof is likely to cause (i) confusion, mistake, and deception as to whether Defendants' e-bikes were certified by UL, (ii) the public to be confused, deceived, and to assume erroneously that Defendants' e-bikes have been certified by UL or that Defendants are in some way connected with, licensed, authorized, certified by, or affiliated with UL, and (iii) irreparable injury and damage to UL and to the goodwill and reputation symbolized by the UL Marks.

98.     Likelihood of confusion is enhanced by the fact that the UL Certification Marks and the UL Service Mark are strong, well-known, and entitled to a broad scope of protection.

99.     Likelihood of confusion is also enhanced by the fact that the Counterfeit UL Marks, the UL Certification Marks and the UL Service Mark prominently incorporate the key component "UL."

100.     Defendants' use of the Counterfeit UL Marks without UL's authorization or consent is a willful and intentional infringement of the UL Certification Marks and the UL Service Mark.

101.     Defendants' intended to exploit UL's goodwill and reputation associated with the UL Certification Marks and the UL Service Mark. Consumers are likely to purchase or engage Defendants' e-bikes being offered under the Counterfeit UL Marks, believing them to have been certified by UL, thereby resulting in a loss of goodwill and economic harm to UL.

21

102.     UL has no control over the quality of Defendants' e-bikes promoted and sold by Defendants. Defendants have recklessly placed e-bikes into the marketplace which purport to have been certified by UL, when in fact UL never performed any such certification testing on the e-bikes Defendants are selling.

103.     UL is informed and believes and, on that basis, alleges that Defendants have derived unlawful gains and profits from their infringing use of the Counterfeit UL Marks.

104.     Unless Defendants are enjoined by this Court from so doing, UL will continue to suffer irreparable harm and injury to its goodwill and reputation.

105.     UL has no adequate remedy at law.

106.     As a result of Defendants' actions, UL has suffered, and will continue to suffer, monetary damages in an amount to be proven at trial.

## COUNT VI

## COMMON LAW UNFAIR COMPETITION

107.     UL repeats and realleges paragraphs 1 through 56 as if set forth herein.

108.     Defendant has unfairly and intentionally used the UL Certification Marks and the UL Service Mark to misrepresent their e-bikes as having been tested and/or certified by UL.

109.     Defendants have engaged in such unfair and improper conduct to trade off of, and benefit from, UL's reputation and goodwill in the UL Certification Marks and the UL Service Mark.

110.     Defendants have derived, and continues to derive, unfair and illicit profits by trading off of the reputation and goodwill of the UL Certification Marks and the UL Service Mark.

111.     The acts described in Paragraphs 1 through 56 above, constitute unfair competition under this State's common law.

22

112.     Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to UL.

113.     UL has no adequate remedy at law.

114.     Defendants' conduct was oppressive, fraudulent, and malicious, entitling UL to an award of punitive damages. Indeed, as noted above, Defendants continue to sell products bearing the Counterfeit UL Marks even after UL sent Defendant Rundeer correspondences which clearly put Defendants on notice that they were selling counterfeit products.

## COUNT VII

## COMMON LAW UNJUST ENRICHMENT

115.     UL repeats and realleges paragraphs 1 through 56 as if set forth herein.

116.     UL has invested substantial time, resources, and money developing, growing, and promoting the UL Certification Marks and the UL Service Mark and the respective goodwill and reputation associated therewith.

117.     Defendants have unfairly and intentionally used the UL Certification Marks and the UL Service Mark to misrepresent their e-bikes as having been tested and/or certified by UL.

118.     Defendants have engaged in such unfair and improper conduct in order to trade off of, and benefit from, the UL's reputation and goodwill in the UL Certification Marks and the UL Service Mark.

119.     Defendants have derived, and continue to derive, unfair and illicit profits by trading off of the respective reputation and goodwill of the UL Certification Marks and the UL Service Mark.

120. By being able to trade off of, and profit from, the UL Certification Marks and the UL Service Mark and the respective goodwill and reputation associated therewith, Defendants have been unjustly enriched.

121. It would be unjust for Defendants to be permitted to retain the illicit profits it earned through their sale of products bearing the Counterfeit UL Marks.

122. The acts described in Paragraphs 1 through 56 above, constitute unjust enrichment under this State's common law.

123. Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to UL.

124. UL have no adequate remedy at law.

### **PRAYER FOR RELIEF**

WHEREFORE, UL respectfully prays the Court:

A. Enter a judgment in favor of UL and against Defendants on all Counts alleged herein;

B. Designate this action an exceptional case entitling UL to an award of its reasonable attorneys' fees incurred as a result of this action, pursuant to 15 U.S.C. § 1117;

C. Issue permanent injunctive relief against Defendants and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from:

(i) imitating, copying, or making any other infringing use of the UL Service Mark and the UL Certification Marks by the Defendants' Counterfeit UL Marks, and any other mark now or hereafter confusingly similar to the UL Service Mark or the UL Certification Marks;

(ii) manufacturing, assembling, producing, distributing, offering for distribution,

circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the UL Service Mark, the UL Certification Marks, Defendants' Counterfeit UL Marks, or any mark confusingly similar thereto;

(iii)    using any false designation of origin or false description or statement that can or is likely to erroneously lead the trade or public or individuals to believe that any good has been provided, produced, distributed, offered for distribution, circulated, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for UL, when such is not true in fact;

(iv)    using the names, logos, or other variations thereof of the UL Service Mark, the UL Certification Marks, or Defendants' Counterfeit UL Marks in any of Defendants' trade or corporate names;

(v)    engaging in any other activity constituting an infringement of the UL Service Mark, the UL Certification Marks, or of the rights of UL in, or right to use or to exploit the UL Service Marks and the UL Certification Marks; and

(vi)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (v) above;

D.    Order Defendants, at their own expense, and subject to review by UL, to recall all products and marketing, promotional, and advertising materials that bear or incorporate Defendants' Counterfeit UL Marks, or any mark confusingly similar to the UL Certification Marks or the UL Service Mark, which have been manufactured, distributed, sold, or shipped by Defendants or on their behalf, and to reimburse all customers from which said materials are recalled;

E.    Order Defendants to immediately produce and turn over to UL's counsel, all

25

products, labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, and advertisements in their possession or under its control, bearing the Defendants' Counterfeit UL Marks, and/or any simulation, reproduction, copy, or colorable imitation thereof, and all plates, molds, matrices, and any other means of making the same;

F.      Order Defendants to immediately supply UL with a complete list of entities to whom they distributed and/or sold products falsely bearing the UL Certification Marks and the UL Service Mark as well as complete information regarding the sourcing and manufacture of Defendants' e-bikes bearing the Counterfeit UL Marks;

G.      Order expedited discovery to commence immediately;

H.      Order Defendants to publish notice to all customers or members of the trade who may have seen or heard of Defendants' use of Counterfeit UL Marks, as well as to the appropriate regulatory bodies, which notice shall disclaim any connection with UL and shall advise them of the Court's injunction order and of Defendants' discontinuance from all use of Defendants' Counterfeit UL Marks;

I.      Order Defendants to file with this Court and to serve upon UL within thirty (30) days after service upon each Defendant of an injunction in this action, a written report by Defendants, under oath, setting forth in detail the manner in which Defendants have complied with the injunction;

J.      Order Defendants to pay the costs of corrective advertising and any public, regulatory or other notices issued by UL;

K.      Order Defendants to hold in trust, as constructive trustees for the benefit of UL, its profits obtained from their provision of the Defendants' e-bikes offered for sale under the Counterfeit UL Marks;

L.      Order Defendants to provide UL a full and complete accounting of all amounts due and owing to UL as a result of Defendants' illegal activities;

M.      Order Defendants to pay the general, special, actual, and statutory damages of UL as follows:

(i)      UL's damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for Defendants' willful violation of the federally registered trademarks of UL; and

(ii)     If UL so elects, statutory damages of up to $2,000,000 per counterfeit mark, per type of product sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c);

N.      Order Defendants to pay to UL both the costs of this action and reasonable attorneys' fees incurred by UL in prosecuting this action, pursuant to 15 U.S.C. § 1117(a);

O.      Award UL its prejudgment interest; and

P.      Award such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

UL hereby demands a trial by jury of all triable issues raised by this Complaint.

DATED: October 27, 2025                    GREENBERG TRAURIG, LLP

By: /s/ *Cameron M. Nelson*_____

Cameron M. Nelson
Jacqueline Brousseau
Molly J. Carr
Michelle Kim
GREENBERG TRAURIG, LLP
360 N. Green St.
Suite 1300
Chicago, IL 60607
(312) 456-1020
nelsonc@gtlaw.com

jacqueline.brousseau@gtlaw.com
carrm@gtlaw.com
michelle.kim@gtlaw.com

*Attorneys for Plaintiff UL LLC*